# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MAGMA HOLDING, INC., a Nevada Corporation, META LAB, INC., a Nevada Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>KA TAT "KARTER" AU-YEUNG, an individual,<br><br>Defendant. | Case No. 2:20-cv-00406-RFB-BNW<br><br>**ORDER** |

Before the Court is Plaintiffs Magma Holding, Inc. ("Magma") and Meta Lab, Inc's ("Meta") (collectively "Plaintiffs") Emergency Ex Parte Motion for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction. ECF Nos. 8, 11. For the following reasons, the Court grants the motion.

## I. PROCEDURAL BACKGROUND

Plaintiffs filed their complaint against Defendant Ka Tat "Karter" Au Yeung ("Karter" or "Defendant") on February 26, 2020. ECF No. 1. Karter was served on February 27, 2020, but has not yet appeared in this case. ECF No.5. In their complaint, Plaintiffs bring conversion, embezzlement, claim and delivery, unjust enrichment, breach of fiduciary duty, breach of contract, breach of implied covenant of good faith and fair dealing, violations of the Lanham Act (15 U.S.C. § 1125(a)(1)(a)); violations of the Computer and Fraud Abuse Act (18 U.S.C. § 1030(a)(2)), tortious interference with contractual relations, violations of the Defend Trade Secrets Act (18 U.S.C. § 1836), and misappropriation of trade secrets claims. ECF No.1. Plaintiffs also seek

injunctive and declaratory relief. Plaintiffs have now filed an emergency ex parte motion for a temporary restraining order. ECF No.8.

## II. FACTUAL BACKGROUND

In the motion, Plaintiffs allege as follows:

### a. Founding of Magma and Meta

Magma and Meta are both Nevada corporations that sell vape/e-cigarette products in the United States and abroad. Magma is an e-cigarette and vape products retailer and wholesaler, which sells e-cigarettes and vape products created by Meta, as well as other third-party vendors. Magma and Meta primarily sell their products through online marketplaces (though some sales are also made through phone orders). MOTI Technology Co. Ltd. f/k/a MGAO Technology Co. Ltd. ("Moti"), a Cayman Island corporation, is the parent company to both Magma and Meta. Moti is owned by a group of shareholders that includes Defendant Karter through his holding company entities.

In or around March 2015, Qian, "Daniel" Xu, a citizen and residence of Shenzen China, along with his friend and former business partner, Daxin Chan, began setting up and operating an e-cigarette and vape products business called Eightcig. Initially, Chan and Xu agreed to split ownership of Eightcig 50/50. In or around April 2015, Xu met Karter and agreed to bring him on as a partner/member in Eightcig. Thereafter, Xu, Chan and Karter agreed to split ownership of Eightcig equally. Also, in or around April 2015, Mr. Chan bought the domain name "Eightcig.com" with his personal funds. Chan did so because they were still in in the process of forming the legal entity for the company and did not yet have a company bank account. However, Karter, Mr. Chan, and Xu all agreed at that time that the domain name would be designated a company asset. Thereafter, they began using the domain name for Eightcig's wholesale business, and later for its retail business as well. In June 2015, Eightcig LLC was formed under the laws of the State of Nevada. Karter and Xu were the managing members of the LLC. Eightcig LLC quickly became profitable and the company grew rapidly. By the beginning of 2017, Karter had a 27.1% ownership interest, Xu had a 27.1% ownership interest, and Yuxiang Gao ("Michael"), a friend of Yu's who provided seed funding, had a 45.8% ownership interest.

In or about early 2018, ZhenFund, a venture fund based in China, showed interest in investing, and in November 2018, Moti, the parent company of Magma and Meti was founded. Zhen Fund's investments in Moti closed in April or May 2019. Prior to the closing in 2019, Karter, Michale, and Xu were issued ordinary shares of Moti through their respective holding companies. EightCig LLC was rebranded as Magma as part of the Moti restructure. Karter, Michael and Xu were the original Board of Directors. Magma became a wholly owned subsidiary of Moti in or about December 2018, while Meta, which was incorporated in or about January 2009, became a wholly owned subsidiary of Magma. Meta's original directors and officers were Siyun "Crystal" Lu, believed to be Karter's cousin, Zhou Yuan, and Eric Wong. Karter was named Meta's President and treasurer. On or about December 18, 2019, Michael resigned from the Board of Directors of Magma.

Thereafter and until January 22, 2020, Karter and Xu were the sole members of the Magma Board of Directors. Karter served as Magma's Vice President of Sales. Karter continued to manage the day-to-day operations of the company, including sales, purchasing, and was the designated signatory on all Magma bank accounts. In addition, Karter oversaw Meta's operations. Karter also oversaw Meta's day-to-day operations. Among other things, he was an authorized signatory on all Magma and Meta bank accounts – in some cases the sole authorized signatory. He had sole administrative access to certain key website domains through which Magma and Meta sold their products, including eightvape.com and eightcig.com. Similarly, he was the only individual listed as a representative and/or administrator to certain e-commerce platforms through which Magma operates its sales websites, including Shopify (eightvape.com) and BigCommerce (eightcig.com).

Karter was the sole administrator for Magma's Google G Suite account, which included the email, various applications, and cloud storage for data and documents associated with the eighvape.com and eightcig.com website's operations. Furthermore, Karter was the signatory for Magma for the two merchant service provider accounts with BankCard USA through which the revenues generated by sales from the eightvape.com and eightcig.com websites flowed.

At no time did Karter ever have any direct ownership interest in Meta. Moreover, any purportedly direct ownership interest Karter had in Magma ceased to exist pursuant to the

corporate restructuring related to the ZhenFund investment. Accordingly, Karter does not have a direct ownership interest in Magma. Meta is 100% owned by Magma, and Magma is in turn 100% owned by Moti. Karter currently has a small minority interest in Moti of less than 6%.

As a condition of his employment, on or about March 4, 2019, Karter executed a Confidential Information and Invention Assignment Agreement, which, among other things, required Karter to protect and not misappropriate or disclose to any third parties any of Magma's Confidential Information (the "CIAA").

In addition, on or about April 28, 2019, Karter and Xu both executed a Confirmation Letter in favor of Meta in which they confirmed certain domain names had been registered in their own names, but that Meta was the true owner of the domain names. Eightcig.com and eightvape.com were among the domain names referenced in the Confirmation Letter as belonging solely to Meta. These domain names are registered with the internet domain registrar GoDaddy.

**b. Unauthorized Money Transfers and Subsequent Termination**

On or about January 6, 2020, Karter transferred the following amounts from certain Wells Fargo Bank accounts owned by Magma: (1) $150,000.00 to Karter's personal bank account; (2) $150,000.00 to another Magma employee's personal bank account; and (3) $6 million from a Magma bank account on which Karter was a co-signatory to a Meta bank account on which Karter was the sole signatory (collectively, the "January 6 Transfers"). These transfers were not part of Magma's normal course of business and were not authorized by Magma's board of directors, nor were they authorized by Moti.

Upon learning of the January 6 Transfers a little over a week later, Moti's CFO, Marcus Meng, sent Karter an e-mail requesting an explanation for the unauthorized transfers. Karter did not immediately respond to the e-mail, but Michael and Karter had subsequent telephone conversations on or about January 17, 2020 wherein they discussed the unauthorized transfers and Karter stated that he would not return the transferred funds to Magma until an agreement was reached to buy-out Karter's interest in Moti. After that conversation, on January 22, Karter sent a response to Marcus' e-mail stating he had "discussed this with Michael" and asking Marcus to "send any relevant internal procedure, board resolution(s) and meeting minutes regarding this."

Due to Karter's refusal to return the funds and by and through Magma and Meta's respective Written Consent of the Sole Shareholder, Action by Unanimous Written Consent of the Board of Directors, Certificate of Amendment and accompanying Amended and Restated Articles of Incorporation, and Amendment No. 2 to Company Ownership and Operating Agreement (all dated January 22, 2020, except for the Amended and Restated Articles of Incorporation which were filed on January 23, 2020), Karter was removed from all Magma and Meta director and officer positions. Karter was ultimately given notice of termination of his employment on or about February 25, 2020, via electronic mail and United States mail.

In response to Karter's refusal to reverse the unauthorized bank transfers, and in connection with his removal from his supervisory positions at Magma and Meta, Plaintiffs intended to replace Karter as the designated signatory and administrator on relevant bank and vendor accounts. However, on or about February 6, 2020, prior to Karter being effectively removed as a designated signatory and administrator on all accounts, Karter executed yet another money transfer, this time moving the aforementioned $6 million (which Karter previously transferred, without authorization, from Magma's account to Meta's account) to his personal bank account. Wells Fargo, having been alerted to Karter's unauthorized transfers, responded by freezing yet another of Magma's accounts on or about February 7, 2020, which caused Magma to lose access to an additional $2 million. Next, on February 10, 2020, Karter caused an additional $450,000 to be transferred from a Magma account to which he still had access to the Magma account frozen by Wells Fargo.

Most recently, on March 5, 2020, Karter caused an additional $290,000.00 to be transferred from a Magma account to which he still had access to the Magma account frozen by Wells Fargo. Accordingly, as a result of Karter's unauthorized bank transfers, Magma has lost access to at least $9.04 million of its money for over a month with no end in sight. This loss of funds has caused serious liquidity problems and continues to deprive Magma and Meta of its funds.

/ / /

/ / /

/ / /

### c. Karter's Interference With Plaintiffs' Online Platforms

#### i. GoDaddy

As previously noted, the eightvape.com website is registered with GoDaddy. Karter is registered with GoDaddy as the administrator of this website and has transferred the domain to another, unknown account. Accordingly, Karter is in control of the website and Magma/Meta does not have the necessary access to make changes to and otherwise manage the website. Contrary to the Confirmation Letter, and despite Magma and Meta's repeated demands, Karter has refused and continues to refuse to return the domain to Magma/Meta, effectively locking Magma/Meta out of their own website and leaving Plaintiffs unable to respond if certain problems with the websites arise. Karter also retains the ability to freeze or take down the website, as well as redirect users to other websites.

#### ii. Shopify

Magma operates eightvape.com via Shopify's eCommerce platform, which enables customers to select and purchase products on the website. Every product purchase through eightvape.com is managed through the Shopify platform (known as a "store"). Therefore, Magma is dependent on the Shopify eCommerce platform to complete product sales and receive the revenue from those sales. Sales from the eightvape.com website represented approximately 40% of Magma's total sales during 2019. Magma is the current Shopify account holder and Meta is the current legal owner of the eightvape.com domain.

On or about February 13, 2020, Karter contacted Shopify and instructed Shopify to remove the eightvape.com domain from Magma's Shopify store, falsely claiming that Karter owned the eightvape.com domain. As proof of his "ownership," Karter provided the receipt showing that he personally registered the eightvape.com domain, while intentionally omitting that he had made the purchase in his capacity as an agent of Eightcig LLC and that he had affirmed in the Confirmation Letter that Meta was the owner of the domain. As a result, Shopify contacted Magma and notified Magma that "[i]n cases like these we typically need to remove the domain from the store in question…." Magma was notified of Karter's request on February 18, 2020.

Magma spent the next approximately two days scrambling to provide proof satisfactory to Shopify of Magma's eightvape.com ownership and interfacing with their various account and compliance representatives. On February 20, 2020, Shopify notified Magma that "Karter's request has been put on hold" for the time being because it did not find Karter's claim to be persuasive.

On March 9, 2020 Shopify informed Magma that there was a "new deal with [Shopify] involving both EightVape and EightCig." Magma has taken no steps towards such a deal, and moreover the Eightcig domain has a different eCommerce provider, BigCommerce. Plaintiffs thus suspect that Karter is attempting to interfere with Magma's relationship with Shopify.

### iii. Big Commerce

Magma operates eightcig.com via BigCommerce's eCommerce platform. Every product purchase through eightcig.com is managed through the BigCommerce platform (known as a "store"). Therefore, Magma is dependent on the BigCommerce eCommerce platform to complete product sales and receive the revenue from those sales. Sales from the eightcig.com website represented approximately 60% of Magma's total sales during 2019. Magma is the BigCommerce account holder and, as reflected in the Confirmation Letter, Meta is the current legal owner of the eightcig.com domain.

On or about February 13, 2020 Karter contacted BigCommerce, falsely claiming that he owned the eightcig.com domain and the BigCommerce account for eightcig.com. At the time, the BigCommerce contract for the account had expired, and therefore BigCommerce representatives wanted to prepare a new contract. Due to Karter's false claims, BigCommerce has, to date, refused to provide a new contract to Magma. Magma representatives have spent many hours negotiating with BigCommerce to try and convince BigCommerce that Karter is not an employee or authorized representative of Magma. These negotiations are still ongoing. In particular, the two websites serviced by GoDaddy, Shopify, BigCommerce and BankCard USA represent 100% of Magma's total sales as a company.

### iv. Google G Suite

Magma is the owner of the Google G Suite email system associated with the Eightvape and Eightcig websites. The G Suite does not just include email, but also includes applications and cloud

storage for data and documents associated with the websites' business operations. Xu originally registered the G Suite account on behalf of Magma. Accordingly, the G Suite account belongs to Magma. Karter and Xu were the only two Magma employees with "super admin" access to the G Suite account, which afforded them ultimate control over the G Suite account. However, Xu lost his super admin access to the G Suite account at some point during the last few months. Plaintiffs believe that Karter changed the applicable settings to eliminate Xu's super admin access.

Karter has refused to return control of the super admin account to Magma and has the sole ability to shut down the email system or limit any account user's access at any time. Karter's control of the super admin account allows him to monitor and review any emails that come in and out of the G Suite email system, notwithstanding the fact that he has been terminated from Magma, had previously been removed from all of his officer and director positions with both Magma and Meta, and has been repeatedly instructed to cease and desist holding himself out as an authorized representative of either Magma or Meta. The only alternative to Karter returning super admin access to Magma is for Magma to open a new account for the G Suite system. However, opening a new account would result in the loss of all previous email data and information for the business, because the G Suite system only permits one active account at a time.

**d. Misappropriation of Magma Sales Materials and Other Confidential Information**

On or about February 12, 2020, six days after Karter's additional unauthorized transfer of $6 million from a Meta account to his personal account, and approximately three weeks after being removed from all of his positions at Magma and Meta, Karter's cousin, Siyun "Crystal" Lu, who was at the time also a Magma employee, logged into Magma's Shopify Store, where it sells a majority of its products, and downloaded large quantities of data, including all of the product information for all products on one of Magma's main product retail websites, Eightvape.com. The downloaded information included large amounts of information on over 150,00 products, including images of each product, titles, descriptions of each product, product compatibility information, and other information important to consumers considering a purchase of Eightvape products, such as pricing and comparative pricing information. Magma's Shopify store also contains critical and highly confidential information on Magma's customers including lists of over

300,000 of Magma's registered retail customers from the past 5 years as well as behavior data for all of those customers. Plaintiffs believe that Crystal downloaded this information at Karter's behest, and that Karter plans to use this information to create a competing business. On or about February 28, 2020, Magma terminated Crystal's employment.

Plaintiffs therefore seek an injunction requiring that Karter be restrained from: using or disclosing the confidential information and trade secrets of Plaintiffs; spending, transferring, dissipating, using, disbursing, or otherwise exerting control over the $6.15 million of Plaintiffs' funds Karter transferred to himself on January 6, 3020 and February 6, 2020, except as may be ordered by this Court; making or authorizing any further transfers of funds out of any of Plaintiffs' Wells Fargo Bank accounts; continuing to hold himself out as an authorized representative, officer, treasurer, director, manager, or employee of Plaintiffs to any entity, including, but not limited to Wells Fargo Bank, GoDaddy, BigCommerce, Shopify, Google G Suite, and BankCard USA; taking any action (or inaction) that interferes in any way in any with business activities conducted by Plaintiffs on Plaintiffs' websites, Eightvape.com and Eightcig.com, including but not limited to holding himself out to anyone as the owner of Eightvape.com and/or Eightcig.com; taking any action in relation to Plaintiffs' businesses; and Engaging in any conduct that violates Defendant's Confidentiality and Invention Assignment Agreement.

Plaintiffs further maintain that irreparable injury would result if Karter was given prior notice of this motion because of Karter's continued administrative control over the GoDaddy account for Plaintiffs' website Eightvape.com. Plaintiffs also represent through their counsel that they had previously reached out to Defendant via his counsel for Karter to stop interfering with Karter's business, but that he has not done so, and any further attempt to meet and confer is impracticable.

### III. LEGAL STANDARD

A temporary restraining order may be issued without notice to the adverse party only if the moving party: (1) provides a sworn statement clearly demonstrating "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (2) sets forth the efforts made to notify the opposing party and why notice

should not be required. Fed. R. Civ. P. 65(b)(1). TROs issued without notice "are no doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Reno Air Racing Ass'n v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting Granny Goose Foods, Inc. v. Bhd. of Teamsters, 415 U.S. 423, 439 (1974)). The analysis for a temporary restraining order is "substantially identical" to that of a preliminary injunction. Stuhlbarg Intern. Sales Co, Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter, 555 U.S. 7, 20 (2008)). A preliminary injunction may also issue under the "serious questions" test. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011) (affirming the continued viability of this doctrine post-Winter). According to this test, a plaintiff can obtain a preliminary injunction by demonstrating "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," in addition to the other Winter elements. Id. at 1134-35 (citation omitted).

**IV.     DISCUSSION**

The Court finds that the requirements for issuing a TRO without notice are satisfied. Plaintiff alleges that irreparable injury may occur before Defendant can be heard in opposition, as Karter maintains control of Plaintiffs' funds and access to its various sales platforms, which represent 100% of Plaintiffs' sales. Plaintiffs have sufficiently demonstrated that immediate and irreparable injury could result in the form of Karter unilaterally freezing, taking down or diverting

traffic from the GoDaddy account for Plaintiffs' website, as has been demonstrated by Karter's previous acts that have disrupted Plaintiffs' business. Plaintiffs have also detailed and certified in writing past efforts to give notice and why it should not be required. Plaintiffs attached with their motion email exchanges between Plaintiffs' counsel and Defendant's counsel regarding past requests made by Plaintiffs' counsel that Karter stop disrupting Plaintiffs' business.

The Court also finds that the four Winter factors are present. Plaintiffs have established a likelihood of success on their conversion, breach of fiduciary duty, breach of contract, breach of implied covenant of good faith and fair dealing, false designation claim under the Lanham Act (15 U.S.C. § 1125(a)(1)(A), violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030(a)(2), violation of the Defend Trade Secret Act (18 U.S.C. § 1836), and misappropriation of trade secrets claims. The facts alleged in Plaintiffs' complaint and preliminary injunction are such that, if proved true, would very likely entitle Plaintiff to recovery under these claims. Plaintiffs have also established irreparable injury, for the reasons previously stated—that immediate and irreparable injury could result in the form of Karter unilaterally freezing, taking down or diverting traffic from the GoDaddy account for Plaintiffs' website, thus affecting all of Plaintiffs' sales activity. Threatened loss of prospective customers or goodwill can support a finding of irreparable harm. Gallagher Benefit Servs., Inc. v. De La Torre, 283 F.App'x 543 (9th Cir. 2008). The Court also finds that the balance of equities tips in Plaintiffs' favor, as a balance of harms will typically favor an employer who alleges its trade secrets are being misappropriated, and there is also a strong public interest in protecting trade secrets. See Gallagher, 283 F.App'x 543 (9th Cir. 2008) (affirming lower court's grant of a preliminary injunction enjoining former employee from using proprietary customer information he had downloaded from his employer prior to resigning).

**V.  CONCLUSION**

The Court, having considered Plaintiffs' Application for Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction and the documents in support thereof, including the Declaration of Qian "Daniel" Xu in Support of Plaintiffs' Motion for Temporary Restraining Order and accompanying exhibits, the Declaration of Rena Andoh in Support of Plaintiffs' *Ex*

*Parte* Motion for Temporary Restraining Order, and the Plaintiffs' Memorandum of Points of Authorities holds as follows:

**IT IS THEREFORE ORDERED** that Defendant Ka Tat "Karter" Au-Yeung ("Defendant"), and all those acting in concert with him, shall be and hereby are temporarily restrained and enjoined from:

1. Using or disclosing the confidential information and trade secrets of Plaintiffs;
2. Spending, transferring, dissipating, using, disbursing, or otherwise exerting control over the $6.15 million of Plaintiffs' funds Defendant transferred to himself on January 6, 3020 and February 6, 2020, except as may be ordered by this Court;
3. Making or authorizing any further transfers of funds out of any of Plaintiffs' Wells Fargo Bank accounts;
4. Continuing to hold himself out as an authorized representative, officer, treasurer, director, manager, or employee of Plaintiffs to any entity, including, but not limited to, the following businesses/organizations/vendors:
    a. Wells Fargo Bank;
    b. GoDaddy;
    c. BigCommerce;
    d. Shopify;
    e. Google G Suite;
    f. BankCard USA;
5. Taking any action (or inaction) that interferes in any way in any with business activities conducted by Plaintiffs on Plaintiffs' websites, Eightvape.com and Eightcig.com, including but not limited to holding himself out to anyone as the owner or officer or representative of Eightvape.com and/or Eightcig.com;
6. Engaging in any conduct that violates Defendant's Confidentiality and Invention Assignment Agreement.

**IT IS FURTHER ORDERED** that Defendant shall, within four business days of the date of this Order, return to counsel for Plaintiffs all confidential information, trade secrets, and property belonging to Plaintiffs in Defendant's possession, custody or control, including without limitation all passwords and user names.

**IT IS FURTHER ORDERED** that Defendant shall, within five business days of the date of this Order, deposit with the Clerk of this Court the amount of $6.15 million (representing the funds Defendant transferred to his personal bank account from the Plaintiffs' bank accounts on January 6, 3020 and February 6, 2020, to restore the status quo.

**IT IS FURTHER ORDERED** that security in the amount of **$10,000** be posted by the Plaintiffs with the Clerk of the Court prior to **March 16, 2020, at 5:00 PM** for this order to take effect on **March 17, 2020**. If the security is not posted by **March 16, 2020**, this order shall go into effect on the payment of the security any day thereafter.

**IT IS FURTHER ORDERED** that personal service of a copy of this order and annexed affidavit upon the Defendant or his counsel on or before **March 17, 2020**, shall be deemed good and sufficient service thereof.

**IT IS FURTHER ORDERED** that the parties shall appear **telephonically** at **10:30 a.m**. on **March 26, 2020,** before the Honorable Richard F. Boulware II, for a hearing to show cause why an order should not be issued pursuant to Rule 65(a) of the Federal Rules of Civil Procedure preliminarily enjoining Defendant, for the pendency of this action, from: (1) using or disclosing the confidential information and trade secrets of Plaintiffs; (2) spending, transferring, dissipating, using, disbursing, or otherwise exerting control over the $6.15 million of Plaintiffs' funds Defendant transferred to himself on January 6, 2020, February 6, 2020, and March 5, 2020, except as may be ordered by this Court; (3) making or authorizing any further transfers of funds out of any of Plaintiffs' Wells Fargo Bank accounts; (4) continuing to hold himself out as or otherwise communicate that he is an authorized representative, officer, treasurer, director, manager, or employee of Plaintiffs to any entity, including, but not limited to, the following businesses/organizations/vendors: (a) Wells Fargo Bank; (b) GoDaddy; (c) BigCommerce; (d)

Shopify; (e) Google G Suite; and (f) BankCard USA; (5) taking any action (or inaction) that interferes in any way in any with business activities conducted by Plaintiffs on Plaintiffs' websites, Eightvape.com and Eightcig.com;(6) taking any action in relation to Plaintiffs' business; and (7) engaging in any conduct that violates Defendant's Confidentiality and Invention Assignment Agreement.

**IT IS FURTHER ORDERED** the parties shall join the hearing telephonically at **10:30 a.m**. on **March 26, 2020,** before the Honorable Richard F. Boulware II, for a hearing to show cause by dialing by dialing telephone no.: **(877) 336-1829**: Access Code: **3616356** five (**5**) minutes prior to the hearing. Please remain on the line until such a time as the Court joins the call and convenes the proceedings. The call must be made on a land line. The use of a cell phone or speaker phone during the proceedings is prohibited. Counsel should identify themselves for the record before addressing the court.

**DATED**: **March 16, 2020**.

**IT IS SO ORDERED**.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**