# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MAGMA HOLDING, INC., a Nevada corporation; and META LAB, INC., a Nevada corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>KA TAT "KARTER" AU-YEUNG, an individual,<br><br>Defendant.<br><br>AND ALL RELATED ACTIONS. | Case No.: 2:20-cv-00406-RFB-BNW<br><br>**ORDER APPOINTING KEVIN SINGER AS THE DISTRICT COURT RECEIVER OVER THE BUSINESSES OF MAGMA HOLDING, INC., META LAB, INC., AND EIGHTCIG** |

The Plaintiff in this matter is Magma Holding, Inc. and Meta Lab, Inc. (collectively, "Plaintiffs") and the Defendant is Ka Tat Karter ("Defendant") (collectively, "the Parties"). This Court having issued an order on April 26, 2020, appointed Kevin Singer as the District Court Receiver over Magma Holdings, Inc., Meta Lab Inc., EightCig, and all other entities and assets owned by them. Now the Court wishes to issue the following supplemental Orders.

**SUPPLEMENTAL ORDERS APPOINTING RECEIVER**

**IT IS HEREBY ORDERED** that:

1. Kevin Singer (the "Receiver") is appointed as Receiver to take sole and immediate possession, custody, and control of and operate solely as this Court's agent pursuant to this Court's Order over Magma Holdings, Inc., Meta Lab Inc., EightCig, and all other entities and assets owned by them (the "Business"). This shall include, but not be limited to, all bank accounts, credit card accounts, domains, e-commerce accounts, merchant accounts, social media accounts, trademarks, web-sites, inventory, personal

property, computers, tablets, "smart phones," peripheral electronic storage devices, electronic storage "cloud" accounts, books and records, contracts, documents, assets, proceeds, and profits and income (the "Assets of the Business").

2. The Receiver has authority to control the Business and the Assets of the Business, whether held in the Business' name or in the name of third parties on behalf of the Business, any and all federal and state tax returns, all accounting supporting work papers thereto, and all financial documents relating to the Business or Assets of the Business.

3. The principal place of business for the Business is located at 3010 E Alexander Road, Las Vegas, Nevada 89115 (the "Business Premises"). The Receiver is authorized to make peaceable entry to said Business Premises, and other satellite or affiliated business sites to take possession and control of the Business and the Assets of the Business.

4. The Receiver shall have the power to:

    A. Take possession, custody, and control of, and, exclusively and in his sole authority, manage, control, and operate the Business and the Assets of the Business;

    B. Collect all revenue, issues, profits, and income resulting from the Business;

    C. Care for, preserve, operate, and maintain the Business and the Assets of the Business;

    D. Hire and fire employees, managers or consultants;

    E. The Receiver may use any tax identification or social security numbers previously used by the Business in connection with the operation of the Business or obtain new numbers as necessary;

    F. Enter into contracts as the Receiver reasonably believes necessary for the operation and maintenance of the Business;

    G. Institute and prosecute all suits as the Receiver may reasonably

believe to be necessary in connection with the operation of the Business without further order of this Court; defend all suits and actions as may be instituted against the Business or the Receiver without further order of this Court; and issue subpoenas, conduct and participate in discovery, take depositions, pursue contempt actions, and otherwise pursue all remedies available at law and equity to ensure compliance with the Receiver's authority granted herein, except that nothing herein shall empower the Receiver to control or otherwise participate in Plaintiffs' prosecution or defense of the above-entitled lawsuit or the related lawsuit currently pending in the District Court of Clark County, Nevada entitled Au-Yeung v. Gao et al. (Case No. A-20-810395-B) (the "State Court Lawsuit");"

H. Obtain and pay for any licenses or permits that the Receiver reasonably believes to be necessary for the operation of the Business;

I. Incur the expenses necessary for the care, preservation and maintenance the Business; and

J. Sign tax returns on the Business' behalf after consulting the Parties for their input.

5. The Receiver shall be authorized to take control of, communicate, and sign documents on behalf of the Business to protect, preserve, and operate the GoDaddy accounts including but not limited to the domain names of the EightCig and EightVape websites.

6. The Receiver shall be authorized to take control of, communicate, and sign documents on behalf of the Business to protect, preserve, operate, and redirect funds of the Shopify accounts, including, but not limited to, the eCommerce platform for the EightVape website.

7. The Receiver shall be authorized to take control of, communicate, and sign documents on behalf of the Business to protect, preserve, operate, and redirect funds of the BigCommerce accounts, including, but not limited to, the eCommerce platform for the EightCig website.

8. The Receiver shall be authorized to take control of, communicate, and sign documents on behalf of the Business to protect, preserve, and operate the Google G Suite account.

9. The Receiver shall be authorized to take control of, communicate, and sign documents on behalf of the Business to protect, preserve, operate, and redirect funds of the BankCard USA accounts which is the Merchant Service Provider for the EightVape and EightCig websites.

10. Within thirty (30) days after the issuance of this Receivership Order, the Receiver shall file an inventory of all of the property of which he has taken possession pursuant to this Order.

11. The Receiver shall prepare and serve monthly statements (the "Receivership Reports") reflecting the Receiver's fees and administrative expenses, including fees and costs of accountants, attorneys, and other professionals ("Hired Professionals") related to the pertinent period of operation and administration of the receivership estate. Upon service of each statement and no objections filed by the Parties, the Receiver may disburse from the Business funds to pay both the Receiver and the Hired Professional as presented in his monthly Receiver's Reports. If a Party has specific objections to any of the monthly statements prepared by the Receiver or his Hired Professionals, a written objection, on a line items basis, must be delivered to the Receiver within ten (10) days of mailing of the Receiver's Report by the Receiver or the objection is waived.

12. The Receiver's standard billing rates are: Receiver at $275.00 per hour, Senior Project Managers at $250.00 per hour, Accountants at $150 to $225 per hour, and Bookkeeping/Administrative Staff at $85 per hour.

13. The Receiver may employ agents, employees, clerks, attorneys, accountants, and professionals to manage and administer the receivership estate, purchase materials, supplies, and services, and to pay for them at the ordinary and usual rates out of the funds which shall come into the Receiver's possession, and shall do all things and incur the risks and obligations ordinarily incurred by owners, managers, general partners, and operators of similar limited businesses. No such risk or obligations so incurred shall be the personal risks or obligations of the Receiver, but shall be the risk and obligation of the receivership estate.

14. The Receiver may interview and consult with third-party defendants Yuxiang Gao ("Michael") and Qian Xu ("Daniel"), Defendant, and/or former Magma employee Huihui "Sindy" Sun, and any other current or former employees, and, based on his professional business judgment, accept or reject their input concerning the Business. The Receiver is authorized to pay consultation fees as appropriate to any individual who assists the Receiver in the ongoing operations of the respective entities

15. The Receiver is empowered to take over existing bank accounts, removing Plaintiff and Defendant or any other person from the accounts, or establish new bank accounts for the deposit of monies and funds collected and received in connection with the receivership estate, at federally insured banking institutions or savings associations which are not parties to this case. Monies coming into the possession of the Receiver and not expended for any purposes herein authorized shall be held by the Receiver in federally insured interest-bearing accounts.

16. The Receiver shall take possession of the $6,004,583.98 that was deposited by Defendant with the Court. Prior to spending such funds, he shall consult and advise the Parties in advance regarding the need to use said funds and what they will be spent on.

17. The Receiver will review disputed claims by the Parties that were included in the Court's April 26, 2020, Court Order and any other items the Receiver wants to bring to the Court's attention. The Receiver will present the findings to the

Court and the Parties in his monthly Receiver's Report filed with the Court and served on the Parties.

18.   The Receiver and the Parties herein may at any time apply to this Court for instructions or orders regarding further powers of the Receiver that may be necessary to enable the Receiver to perform his duties.

19.   The Receiver shall determine upon taking possession of the Business whether in the Receiver's judgment there is sufficient insurance coverage.  With respect to any insurance coverage, the Receiver shall be named as an insured on the policies for the period that the Receiver shall be in possession of the Business.  If sufficient insurance coverage does not exist, the Receiver shall immediately notify the Parties and will have thirty (30) calendar days to seek sufficient all risk and liability insurance for the Business; provided, however, that if the Receiver does not have sufficient funds to do so, the Receiver shall seek instructions from the Court with regard to whether insurance and what coverages shall be obtained and how it is to be paid.  If consistent with existing law, the Receiver shall not be responsible for claims arising from the lack of procurement or inability to obtain insurance.

20.   Discharge of the Receiver shall require a Court order after a properly noticed motion approving the Receiver's Final Report and Accounting.

21.   The Receiver may engage a locksmith for the purpose of gaining entry to any property that is the subject of this receivership and through any security system, in order to obtain any property or documents to which the Receiver is entitled pursuant to this Order, as well as giving any notices which may be required in performing the Receiver's duties.  The Receiver may have locks or security codes changed, or have keys created that will work for the existing locks.  The Receiver shall determine who may or may not have a key and direct access to the Business Premises in his sole discretion.

22.   The Parties, on receipt of this Order, shall provide the Receiver with all tax identification numbers utilized in connection with the operation of the Business.  The

1  Receiver shall also be entitled to utilize the tax identification numbers during his
2  operation of the Business.

3      23.    The Receiver is authorized to instruct the United States Postmaster that
4  the Receiver has exclusive right to possession and control of all mail addressed to the
5  Business, including any post boxes leased or rented by the United States Postal Service
6  (USPS); and the Receiver is authorized to direct the Postmaster to hold, redirect, or
7  forward all mail of the Business, wherever addressed, to an address as designated by the
8  Receiver.

9      24.    All banks and financial institutions, including, but not limited to, Wells
10  Fargo Bank and Chase Bank, that hold any account of the Business shall immediately
11  turn over all funds in any such account to the Receiver or his designated representative
12  upon request, and shall provide the Receiver with copies of bank records he requests
13  regarding any such accounts.

14      25.    The Parties shall serve the Receiver with all papers in this action and
15  shall give notice to the Receiver about all proceedings.

16      26.    The Parties shall jointly and severally defend and indemnify the Receiver
17  and his employees against any claims or actions that result from his operation of the
18  Business as this Court's Receiver except that the Receiver may not be indemnified
19  against malfeasance as determined by this Court.

20    **IT IS FURTHER ORDERED** that the Parties and their respective agents,
21  partners, contractors, employees, assignees, successors, attorneys, representatives, and
22  all persons acting under or in concert with:

23      A.    Shall upon Receiver's request, immediately relinquish and turn
24          over possession of the Business;

25      B.    Shall upon Receiver's request, turn over to the Receiver and
26          direct all other third parties in possession thereof to turn over all
27          keys, leases, books, records, books of account, ledgers, operating
28          statements, budgets, bills, contracts, inventory and all other

business records relating to the Business, wherever located, and in whatever mode maintained, including information contained on computers and any and all software relating thereto as well as all banking records, statements, and cancelled checks. As used herein, the terms "books" and "records" mean the original or copies of the following documents, electronic data, software programs, current electronic access codes, usernames and passwords for the Business:

i. General ledgers;
ii. Accounts receivable subsidiary ledgers;
iii. Accounts payable subsidiary ledgers;
iv. Cash receipts journals;
v. Cash payment journals;
vi. General journals;
vii. Bank records, including but not limited to statements, canceled checks, wire transfers, account reconciliations, savings passbooks, checks, warrants, drafts, and all records pertaining to bank transactions;
viii. Statement of changes of financial position;
ix. Balance sheets;
x. Profit and Loss statements;
xi. Cash flow statements;
xii. Personal financial statements;
xiii. Sources and disposition of funds;
xiv. All other customarily used accounting records by whatever name or description that may be utilized by the Business;
xv. Evidence of indebtedness made or held by the Business;

      xvi. All computer records, programs/software, and security access codes to all computer files and data related to the Business;

  C. Shall immediately turnover to the Receiver all partnership agreements relating to the Business;

  D. Shall immediately turn over to the Receiver all documents which pertain to all licenses, permits, or government actions or approvals relating to the Business and shall immediately advise the Receiver of any social security or taxpayer identification numbers used in connection with the operation of the Business;

  E. Shall immediately advise the Receiver as to the insurance agent, the nature and extent of any insurance coverage for the Business, and deliver a copy of the insurance policies. The Parties shall immediately name the Receiver as an insured on the insurance policy(s) for the period that the Receiver shall be in possession of the Business. Parties and their agents and representatives are prohibited from canceling, reducing, or modifying any and all insurance coverage currently in existence with respect to Business; and

  F. Shall cooperate with and reasonably assist the Receiver with respect to his operation of the Business, including, but not limited to, promptly responding to any inquiry by the Receiver for information.

27. The Parties are divested of any and all authority to declare bankruptcy on behalf of Business, and the Receiver shall hereafter be the only individual with the authority to declare bankruptcy on behalf of the Business.

///

///

**TEMPORARY RESTRAINING ORDER**

**IT IS FURTHER ORDERED** that immediately and until such further Order of this Court, that the Parties and their agents, partners, property managers, employees, assignees, successors, attorneys, representatives, and all other persons acting in concert with them who have actual or constructive knowledge of this Order, and their agents and employees shall not:

A. Commit or permit any waste of the Business, or suffer or commit or permit any act on the Business or any part thereof in violation of any law, or remove, transfer, encumber, or otherwise dispose of any of the property of the Business or any part thereof;

B. Directly or indirectly interfere in any manner with the discharge of the Receiver's duties under this Order or the Receiver's possession of and operation or management of the Business;

C. Expend, disburse, transfer, assign, sell, convey, devise, pledge, mortgage, create a security interest in, encumber, conceal, or in any manner whatsoever deal in or dispose of the whole or any part of the Business or any of the Assets of the Business, property or proceeds thereof without prior specific Order of this Court;

D. Withhold the Assets of the Business, or books or records regarding its operation, or funds generated from its operation from the Receiver; or

E. Do any act which will, or which will tend to impair, defeat, divert, prevent, or prejudice the preservation or operation of the Business or any of its property, profits, or proceeds.

**IT IS SO ORDERED.**

DATED: May 5, 2020

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**