**CV3 LEGAL**
CHARLES VLASIC III, ESQ.
Nevada Bar No. 11308
197 E. California Ave., Ste. 302
Las Vegas, Nevada 89104
Telephone: (702) 551-1178
Facsimile: (702) 551-1178
cvlasic@cv3legal.com

**REID RUBINSTEIN & BOGATZ**
I. SCOTT BOGATZ, ESQ.
Nevada Bar No. 3367
BRAD LIPMAN, ESQ.
Nevada Bar No. 14567
300 South 4th Street, Suite 830
Las Vegas, Nevada 89101
Telephone: (702) 776-7000
Facsimile: (702) 776-7900
sbogatz@rrblf.com
blipman@rrblf.com

*Attorneys for Defendant/*
*Counterclaimant/Third-Party Plaintiff,*
*Ka Tat Au-Yeung*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| MAGMA HOLDING, INC., a Nevada corporation; and META LAB, INC. a Nevada corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> KA TAT "KARTER" AU-YEUNG, an individual, <br><br> Defendant. <br><br> AND ALL RELATED MATTERS. | Case No.: 2:20-cv-00406-RFB-BNW <br><br> **[PROPOSED] STIPULATION AND ORDER REGARDING PROTOCOL GOVERNING PRODUCTION OF ELECTRONICALLY STORED INFORMATION** |

Plaintiffs/Counterdefendants MAGMA HOLDING, INC. and META LAB, INC. ("Plaintiffs") and Defendant/Counterclaimant/Third-Party Plaintiff KA TAT "KARTER" AU-YEUNG ("Defendant") by and through their respective counsel of record, hereby stipulate and agree to the following protocol for the production of Discoverable Documents and Electronically Stored Information ("Protocol"). Plaintiffs and Defendant are collectively

1 referred to herein as the "Parties" and individually as a "Party".

2       1.    **Definitions**:  In this Stipulation, the following terms have the following
3 meanings:

4            a.    "ESI" means Electronically Stored Information, including, but not
5 limited to, email, attachments to email, other electronic documents such
6 as word processing, spreadsheet, PowerPoint, HTML, and text files and
7 any other files stored in an electronic format.

8            b.    "Metadata" means: (i) information embedded in a Native Format file that
9 is not ordinarily viewable or printable from the application that
10 generated, edited or modified such Native Format file; and
11 (ii) information generated automatically by the operation of a computer
12 or other information technology system when a Native Format file is
13 created, modified, transmitted, deleted or otherwise manipulated by a
14 user of such system.  Metadata is a subset of ESI.

15            c.    "Native Format" means ESI in the electronic format of the application in
16 which such ESI is normally created, viewed and/or modified.

17       2.    **Scope**:  The Parties agree that each producing Party is best situated to evaluate
18 the procedures, methodologies, and technologies appropriate for preservation, collection, and
19 review of their own ESI.  Accordingly, this Stipulation shall govern only the actual production
20 of ESI and shall in no way affect the Parties' respective rights and obligations concerning the
21 preservation, collection, and review of ESI.  All Parties preserve their attorney-client privileges
22 and other privileges, and there is no intent by this Stipulation, or the production of documents
23 pursuant to this Stipulation, to in any way waive or weaken these privileges.  Nothing in this
24 Stipulation shall limit the Parties' respective rights and obligations concerning confidential,
25 proprietary or private information, with respect to which they may make such agreements or
26 Stipulations as they see fit, subject to applicable law.  All documents produced pursuant to this
27 Stipulation are fully protected and covered by the Parties' confidentiality agreements, and
28

1  orders of the Court, as well as any clawback agreements, and protective order(s) of the Court
2  effectuating the same.

3      3.    **General Format of Production.**  Subject to the provisions of paragraph 4,
4  documents that originally existed in electronic form that are produced in these proceedings shall
5  be produced in electronic image form (described below) in the manner provided herein.
6  Documents that originally existed in paper form may be produced in an electronic image form
7  in the manner provided herein, produced in a paper form or made available for initial
8  examination as outlined in paragraph 4.

9      4.    **Initial Examination of Paper Records.**  The Producing Party reserves the right
10 to make certain sets of paper documents available for initial examination by the Requesting
11 Party pursuant to Fed. R. Civ. P. 34(a)(1). Within 30 days from that reservation, the Requesting
12 Party will select those documents it wishes to have produced.  The Producing Party reserves
13 the right to review and screen for privilege or protection any document that is selected for
14 production.  The Producing Party may withhold from that production any privileged document
15 and identify the privileged document on a privilege log. The parties agree that the Producing
16 Party is not waiving, and the Requesting Party will not argue that the Producing Party has
17 waived, any claims of attorney-client privilege, attorney work product protection, or any other
18 privilege or protection, including protections enumerated in the Stipulated Confidentiality
19 Agreement and Protective Order, by making documents available for examination.  In the event
20 the Producing Party becomes aware of an inadvertent disclosure/production of privileged
21 information or a privileged document, the Stipulated Confidentiality Agreement and Protective
22 Order entered into by the Parties in this matter shall govern.

23     5.    **Document Image Format.**  The Producing Party shall make good faith efforts
24 to conform to the specifications in this section based on the party's technological capabilities.
25 Document images produced in electronic form will be produced in single- or multi-page Tagged
26 Image File Format ("TIFFs" or ".tiff format").  All images generated from hard copy documents
27 shall be scanned as black and white images at least 300 d.p.i. resolution and shall be saved and
28

1  produced in a Group 4 compression single "TIFF" format and reflect the full and complete
2  information contained on the original document. All images generated from native electronic
3  documents — except presentations and spreadsheets (e.g., PowerPoint, Excel, etc.) — shall be
4  saved electronically (or "printed") in a Group 4 compression single-or multi-page "TIFF"
5  image, or that reflects the full and complete information contained on the original document.
6  All PowerPoint presentations and spreadsheets shall be produced in native electronic form. All
7  images generated from short message service (SMS) and multimedia messaging service (MMS)
8  shall be produced in searchable .txt files or saved electronically (or "printed") in a Group 4
9  compression single "TIFF" image that reflects the full and complete information contained in
10 the SMS or MMS. The following additional formats may also be acceptable to represent
11 particular ESI or documents: JPEG, JPEG2000, GIF, PNG, singular-image TIFF, and BMP.
12 Documents that present imaging or other formatting problems shall be promptly identified and
13 the parties shall meet and confer to attempt to resolve the problems.
14         Where Meta-data is relevant or likely to lead to the discovery of admissible evidence,
15 and in balancing the needs and economics of the Action, Meta-data for documents generated
16 from native electronic documents shall be provided as set forth in Paragraph 12 below.
17 Notwithstanding the foregoing provisions of this paragraph, the parties recognize that as the
18 case progresses it may be appropriate to allow the parties to produce certain files (*e.g.,* Excel,
19 Lotus 123, or other spreadsheets; e-mails; reports from databases) in either (i) native electronic
20 form or (ii) in a Group 4 compression single "TIFF" image, due to undue burden or cost for a
21 Producing Party. Thus, the parties agree to meet and confer in such circumstances in order to
22 reach a reasonable, alternative form of production. Should the parties be unable to resolve an
23 alternative form of production, the Party seeking the alternative form of production may bring
24 a noticed motion before the Court demonstrating good cause and a specific need for the
25 alternative form of production.
26         6.    **Document Unitization**. If hard copy documents are scanned into an electronic
27 form, the unitization of the document and any attachments and/or affixed notes shall be
28

maintained to the extent possible as it existed in the original when collected by the Parties. The relationship of documents in a document collection (e.g., cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained through the scanning or conversion process.

7. **Color.** If the Requesting Party believes that a document is not legible or where the absence of color materially affects the document, the Requesting Party may request that either the production of an original document for inspection and copying or production of a color image of the document. The Requesting Party agrees to pay for reasonable costs associated with the color scanning and production of color images of documents already produced.

8. **Duplicates.** Where a party has more than one identical copy of an electronic document (*i.e.*, the documents are visually the same and contain the same electronic text), the Producing Party need only produce a single copy of that document. The Parties shall use commercially acceptable methods (*e.g.,* MD5 or SHA-1 hash values) to identify duplicate ESI and globally de-duplicate ESI. In the case of emails, the hash value shall be calculated on the concatenated value of the following fields: to, from, cc, bcc, date and time sent, attachment names, email subject, full body of the email, MD5 hash values of attachments. Family groups, e.g., an email and its attachments, shall be de-duplicated only against other family groups as entities, and no document which is not part of a family group shall be de-duplicated against a member of a family group. However, the foregoing is without prejudice to a party's ability to seek production of multiple instances of an electronic message sent to one or multiple recipients where relevant attachments to e-mail shall be produced pursuant to this Protocol.

9. **Bates Numbering.** Each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not unreasonably obliterate, conceal, or interfere with any information from the source document. No other legend or stamp will be placed on the document image other than a

confidentiality legend (where applicable), redactions, the Bates Number identified above, and any other internal tracking number that the Producing Party may choose to use. The confidential legend shall be "burned" onto the document's image at a location that does not unreasonably obliterate or obscure any information from the source document.

10.  **File Naming Conventions.**  Each page image file shall be named with the unique Bates Number of the page of document, followed by the extension ".TIF" when available. In the event the Bates Number contains a symbol and/or character that cannot be included in a file name, the symbol and/or character will be omitted from the file name. Each native file shall retain its original file name, followed by the document-type extension (*e.g.,* ".DOC", ".PDF", ".XLS", ".HTM", etc.)

11.  **Production Media**.  A Producing Party shall produce documents that it produces in an electronic image form pursuant to paragraph 3 on CD-ROM, DVD, external hard drive, via an FTP site, or such other readily accessible computer or electronic media as the parties may hereafter agree upon (the "Production Media"). If the Producing Party encrypts or "locks" the production, the Producing Party shall include with the production an explanation of how to decrypt the files.

12.  **Metadata.**  To the extent a Producing Party extracts any of the below metadata fields associated with its production, the Producing Party will make a reasonable effort to produce the following metadata fields, to the extent applicable, to the Requesting Party with a load file with each production:

| Field Name | Field Description |
|---|---|
| Begin Bates | Production number of the first page of the document. |
| End Bates | Production number of the last page of the document. |
| Begin Attachment | Production number of the first page of the first document of the document family. |
| End Attachment | Production number of the last page of the last document of the document family. |
| Custodian | |
| AllCustodians | Field identifying all the custodians who possessed copies of the documents. |
| To | All recipients that were included on the "To" line of the email. |
| From | The name and e-mail address sender of the e-mail. |
| CC | All recipients that were included on the "CC" line of the e-mail. |
| BCC | All recipients that were included on the "BCC" line of the e-mail. |
| Date Received | The date/time an e-mail was received. |
| Date Created | The date/time an e-mail or e-file was created. |
| Date Last Modified | Date the document was last modified. |
| Hash | MD5hash value of document or "de-duplication key." |
| File Name | The file name of the document, including file extension |
| Author | Author of document |
| Subject | Document subject line of an e-mail. |
| Orig_File Name | The original file name of an electronic document or an attachment to an Email. |
| File_Ext | The file extension of a document. |
| File_Size | The file size of a document (including embedded attachments). |
| FilePath | The full path to the file at its original location. |
| NativeFilePath | The path to the corresponding native file included with a production volume. |

| | |
|---|---|
| Text Path | The relative path to the corresponding OCR or extracted text file included with a production volume.text file included with a production. |
| Redactions | Whether the document contains redactions or not. |
| Confidentiality | If the document is designated as confidential, the designation should be listed here. |
| Track Changes | Track changes made to document. |
| INTERNETMSGID | Internet message ID assigned by the outgoing mail server which typically includes messageid and a domain name. Example: 0E6648D558F338179524D555@m1p.innovy.net |
| MESSAGEID | Unique identifier of email messages in mail stores. EntryID for Microsoft Outlook, the UniqueID (UNID) for Lotus Notes, or equivalent value for other proprietary mail store formats. |
| INREPLYTOID | Internet message ID of the Email being replied to. |
| CONVERSATIONINDEX | Conversation index value for Microsoft Exchange emails. |
| TXT-CHATROOMNAME | Name of chat room used in the communications. |
| TXT-PARTICIPANTS | List of participant names and/or telephone numbers. |
| TXT-STATUS | Indicates whether text was Sent or Read on the device. |
| TXT-THREAD-GROUP | Populate with the DOCID of the first text in a conversation or chat. |

1   Alternatively, a Producing Party can satisfy its obligations under the provision above by providing information sufficient to identify any attachments to the documents produced. The meta-data listed above shall be labeled and produced on Production Media and shall be provided in a manner suitable for importing the information in a commercially available document management or litigation support software such as Relativity or Concordance.

For avoidance of doubt, the obligation to produce metadata pursuant to this paragraph is triggered only where such metadata information is available and extraction would not constitute an undue burden or expense. Where such metadata information is not available and/or not capable of extraction without undue burden/expense, this paragraph shall not impose any obligations on any Producing Party.

13. **Load File Formats.**

   a. <u>Image Load Files</u>

      i. ESI will be produced in Concordance or another text delimited standard and custom load file format. Upon request and demonstration of need, the Parties will meet and confer to discuss production in an alternative load file format or to produce without load files.

      ii. Every document referenced in a production image load file shall have all corresponding images, text, and data. Redacted text shall not be included in a redacted document's text file.

      iii. The name of the image load files shall mirror the name of the delivery volume, and should have an .opt or .log file extension (*e.g.,* ABC001.0PT or ABC001 .LOG).

      iv. The volume names shall be consecutive (*e.g.*, ABC001, ABC002, *et. seq.*).

      v. Each folder will have a limit of 1,000 files per folder.

      vi. Every image in the delivery volume shall be contained in the image load file.

      vii. The image key shall be named the same as the production number of the page.

      viii. Load files shall not span across media (*e.g.,* CDs, DVDs, Hard Drives, etc.); instead, a separate volume shall be created for each piece of media delivered.

      ix. Each image load file shall be produced in a standard litigation support image load format (*e.g.*, .opt or .log) providing:

          1. The document number for each image;
          2. The relative path name(s) of each TIFF image file; and
          3. The document boundaries for each document.

  b. <u>Data Load Files</u>

      i. Metadata fields that are not applicable to a document or are NULL shall be left with null values and not populated with fillers or spaces.

      ii. All date fields shall be produced in "mm/dd/yyyy" format.

      iii. All time fields shall be produced in "hh:mm:ss" format.

      iv. Load files shall not span across media (*e.g.,* CDs, DVDs, Hard Drives, etc.); instead, a separate volume shall be created for each piece of media delivered.

      v. The name of the metadata load file shall mirror the name of the delivery volume, and shall have a .dat or .txt extension (*e.g.*, ABC001.DAT or ABC001.TXT)

      vi. The volume names shall be consecutive (*e.g.*, ABCOO 1, ABC002, *et. seq.*).

      vii. Each folder will have a limit of 1,000 files per folder.

   viii. The metadata fields listed above (as pertain to particular categories of documents pursuant to this Protocol) shall be included in the delimited database load files, to the extent such metadata is already in existence and reasonably accessible. To the extent that metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, nothing in this Protocol shall require any party to extract, capture, collect or produce such metadata.

   ix. To the extent that the metadata listed above relating to any ESI contains information subject to a claim of privilege or any other applicable protection, that metadata may be redacted or withheld, as appropriate, and the Producing Party shall include information regarding the basis and justification for withholding or redacting such information in its privilege log.

14. **Databases.** To the extent a response to discovery requires production of discoverable electronic information contained in a database, the parties shall meet and confer about the extent of the Producing Party's obligations in relation to the same. Prior to any such meet and confer, the Producing Party will provide sufficient information to enable the Receiving Party to evaluate the best method and format of production, including such information as the database or data store name, business purpose, database or data source owner, database schema/field list, standard reports, export capabilities, and all manuals including but not limited to administrator, programmer and user manuals.

15. **Production of Other Electronic Documents.** This Order only applies to the production of the following categories of electronic documents in accordance with the provisions herein: databases, e-mails (and any associated attachments), word processing documents, spreadsheets, presentations, and imaged documents (in any format). The Parties shall meet and confer to agree on the form of any production of electronic documents other than the foregoing.

16. **Exceptions to Protocol**. If the forms of production allowed by this protocol present an undue burden or cost for a Producing Party, the parties shall meet and confer to agree on a reasonable, alternative form of production. Any Party may file a motion to seek individual relief from this protocol.

17. **Use of Documents**. When documents produced in accordance with this Order are used in any proceeding herein, including depositions, hearings, or trial, the image copy of documents as described in Paragraph 5 shall be the copy used.

18. **Privilege Logs.** The Producing Parties will produce privilege logs in Excel, Word, or a similar electronic format that allows text searching and organization of data. A Producing Party will produce a privilege log within 14 days after the completion of its document production. The production of a privilege log for a custodian will be not less than 10 days prior to a custodian's deposition. The parties may modify the deadlines for production of privilege logs by agreement.

When there is a chain of privileged e-mails, the Producing Party must log each e-mail contained within the chain separately. Distinct claims of privilege within an email chain must be separately identified, and parties shall be required to produce any non-privileged emails or information contained within the chain.

To the extent available, the privilege log will contain the following metadata fields: the custodian, document type (*e.g.*, email, Word document, Excel spreadsheet, etc.), date last modified or sent, file name, and, if an email or email chain, the sender(s) and the recipient(s) (to, cc, and bcc). The Producing Party will also include on the log a control number, a privilege description, and privilege assertion. If a party redacts a responsive document, that party will provide a redaction log identifying each document that contains a redaction and the reason for the redaction.

The process for objections shall be governed by the Stipulated Confidentiality Agreement and Protective Order entered into by the Parties in this matter.

1    19.    **Costs of Production.**  The Parties reserve the right to seek cost shifting as appropriate at a later time.

    20.    **Discovery and Admissibility.**  Nothing in this Order shall be construed to affect the discoverability or admissibility of any document or data. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at any time.

    21.    **Limitations; Non-Waiver and Claw-Back Agreement.**  The Parties and their attorneys do not intend by the instant Document Production Protocol to waive their rights to any protection or privilege, including the attorney-client privilege and work product doctrine, or their rights to object to any discovery requests.

    Upon written request by a party producing or disclosing information ("Disclosing Party" or "Producing Party") which the Disclosing or Producing Party considers to be protected by a privilege (*e.g.*, attorney-client privilege, work product doctrine, etc.) ("Privileged Information"), the party receiving such information ("Receiving Party") hereby agrees to promptly return, sequester, or destroy any Privileged Information disclosed or produced by the Disclosing or Producing Party upon such written request.  Said written request must include a privilege log (or an update/supplement to previous privilege log) for such Privilege Information. The Receiving Party may sequester (rather than return or destroy) such Privileged Information only if it contends that the information itself is not privileged or otherwise protected and it challenges the privilege designation, in which case it may only sequester the information until the claim of privilege or other protection is resolved.  If any party disputes the privilege claim ("Objecting Party"), that Objecting Party shall object in writing by notifying the Producing Party of the dispute and the basis therefore. The parties thereafter shall meet and confer in good faith regarding the disputed claim within ten (10) court days after service of the written objection. In the event that the parties do not resolve their dispute, the Objecting Party may bring a motion for a determination of whether a privilege applies within ten (10) court days of the meet and confer session, but may only contest the asserted privileges on grounds

1  other than the inadvertent production of such document(s).  In making such a motion, the
2  Objecting Party shall not disclose the content of the document(s) at issue, but may refer to the
3  information contained on the privilege log and may submit a sealed copy of the document(s) at
4  issue to the Court for in camera review.  Nothing herein shall relieve counsel from abiding by
5  applicable ethical rules regarding inadvertent disclosure and discovery of inadvertently
6  disclosed privileged or otherwise protected material.  The failure of any party to provide notice
7  or instructions under this Paragraph shall not constitute a waiver of, or estoppel as to, any claim
8  of attorney-client privilege, attorney work product, or other ground for withholding production
9  as to which the Disclosing or Producing Party would be entitled in this action.
10  . . .
11  . . .
12  . . .
13  . . .
14  . . .
15  . . .
16  . . .
17  . . .
18  . . .
19  . . .
20  . . .
21  . . .
22  . . .
23  . . .
24  . . .
25  . . .
26  . . .
27  . . .
28

22. **Confidentiality.** The confidentiality of ESI produced in accordance with the this ESI Protocol is governed by the Stipulated Confidentiality Agreement and Protective Order entered into by the Parties in this matter.

Dated this 21st day of July, 2020.

By: /s/ *Ryan Lower*
MORRIS LAW GROUP
Ryan M. Lower, NSBN 9108
Raliegh C. Thompson, NSBN 11296
411 E. Bonneville Ave, Ste. 360
Las Vegas, Nevada 89101

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Rena Andoh, *Pro Hac Vice*
Jeffrey T. Kern, *Pro Hac Vice*
Danielle M. Thompson, *Pro Hac Vice*
30 Rockefeller Plaza
New York, New York 10112-0015

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Isaiah Z. Weedn, *Pro Hac Vice*
650 Town Center Drive, 10th Floor
Costa Mesa, California 92626-1993

*Attorneys for Plaintiffs/Counterdefendants* MAGMA HOLDING, INC. *and* META LAB, INC.

Dated this 21st day of July, 2020.

By: /s/ *Charles Vlasic*
CV3 LEGAL
Charles Vlasic III, NSBN 11308
197 E. California Ave, Ste. 302
Las Vegas, Nevada 89104

REID RUBINSTEIN & BOGATZ
Scott Bogatz, NSBN 3367
Brad Lipman, NSBN 14567
300 S. 4th Street, Ste. 830
Las Vegas, Nevada 89101

*Attorneys for Defendant/ Counterclaimant/Third-Party Plaintiff* KA TAT AU-YEUNG

**ORDER**

IT IS SO ORDERED.

_____
UNITED STATES MAGISTRATE JUDGE

DATE: July 24, 2020