# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
\* \* \*

| | |
|---|---|
| Magma Holding, Inc., et al. | Case No. 2:20-cv-00406-RFB-BNW |
| Plaintiffs, | **ORDER** |
| v. | |
| Ka Tat "Karter" Au-Yeung, | |
| Defendant. | |

In this contentious dispute between current and former business partners, defendant/third-party plaintiff Ka Tat "Karter" Au-Yeung moves to deem service effectuated upon third-party defendants Yuxiang Gao ("Michael"), Qian Xu ("Daniel"), and MOTI Technology, Co, Ltd. ("Moti"). ECF No. 88. Michael and Daniel reside in China, and Moti is a Cayman Islands entity. Karter purports to have effected service using four methods: (1) email directly to Michael and Daniel; (2) email to plaintiffs' counsel; (3) email to Michael and Daniel's counsel; and (4) international mail to Michael and Daniel at their addresses in the People's Republic of China.

Plaintiffs Magma Holding, Inc. and Meta Lab, Inc. oppose the motion on two relevant bases. First, they argue that service upon the third-party defendants is governed by the Hague Convention, and that Karter's motion should therefore be denied because he failed to submit any evidence showing that he complied with the Convention's terms. The Court rejects this first argument because although the first and fourth methods of purported service implicate the Hague Convention, the second and third do not. When the Hague Convention does not apply, Rule 4(f)(3) permits the Court to authorize service "by other means not prohibited by international agreement," including email.

Second, plaintiffs argue that Karter's motion is procedurally improper because it is antithetical to the third-party defendants' due process rights. Plaintiffs are correct that Karter's

motion is procedurally improper, but not for the reason they offer. The Court finds that it can resolve this kind of motion consistent with the Federal Rules of Civil Procedure and with the third-party defendants' due process rights. However, under mandatory Ninth Circuit authority Karter is required to seek Court approval **prior** to effecting service by email under Rule 4(f)(3). Therefore, the Court must deny his motion.

Because the Court does not grant Karter's motion, it expresses no opinion on whether the second and third methods of service are reasonably calculated to give the third-party defendants notice of this action and an opportunity to respond. However, this service issue has languished long enough. The Court will therefore require, within a week from today's order, a new motion for an order directing service, responses will be due within 5 days, replies will be due 2 days thereafter, and the Court will resolve the motion on an expedited basis.

**I.     Background**

This relatively nascent case already has an extensive procedural history. Magma and Meta are in the business of selling e-cigarette products. ECF No. 1 ¶ 7. They brought suit against Karter in February 2020 and alleged several claims, including conversion, embezzlement, and breach of contract. *Id.* at 14–26; ECF No. 109. Karter is a former corporate director and officer of Magma and Meta. ECF No. 109 ¶ 3. In March 2020 plaintiffs sought a temporary restraining order ("TRO"), which the district judge granted ex parte. ECF No. 13.

Karter answered the complaint, filed a response to plaintiffs' motion for a TRO, moved for the appointment of a receiver over Magma and Meta, and filed third-party claims against Michael, Daniel, and Moti. ECF Nos. 16, 36, 53, and 74. The district judge dissolved the TRO and granted Karter's motion for a receivership. ECF No. 72.

The underlying motion relates to Karter's attempts to effect service upon Michael, Daniel, and Moti. The parties do not dispute that Michael and Daniel reside in China or that Moti is a Cayman Islands entity. ECF No. 88 at 2; ECF No. 93 at 3. Karter originally moved for an order directing service by email (the "Alternative Service Motion"), which plaintiffs opposed. ECF Nos. 61 & 68. Prior to resolving the Alternative Service Motion, the district judge ordered Michael and Daniel to provide Karter's counsel with addresses where they could accept service

by international mail. ECF No. 75. The district judge also ordered Karter to file a reply in support of his Alternative Service Motion by May 13, 2020. *Id.* Instead of filing this reply, Karter withdrew the Alternative Service Motion and filed the underlying motion to deem service effectuated. ECF Nos. 87 & 88.

**II.     Legal standard**

The Constitution does not require any particular means of service of process. *Rio Props., Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1017 (9th Cir. 2002) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Instead, it requires only that service "be reasonably calculated to provide notice and an opportunity to respond." *Id.* To that end, service of process is governed by Rule 4 of the Federal Rules of Civil Procedure.

A federal court lacks jurisdiction over a defendant unless the defendant has been properly served under Rule 4. *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) (citation omitted). Rule 4, however, "is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Id.* Still, "without substantial compliance with Rule 4," "neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction." *Id.*

Rule 4(h)(2) and Rule 4(f) govern service on a foreign business entity and on an individual in a foreign country. Rule 4(h)(2) authorizes service on a foreign business entity in any manner prescribed by Rule 4(f)[1] for individuals. Rule 4(f)(3), in turn, allows for service on an

---

[1]     Federal Rule of Civil Procedure 4(f) provides, in relevant part:

Unless federal law provides otherwise, an individual . . . may be served at a place not within any judicial district of the United States:
(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
    (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
    (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
    (C) unless prohibited by the foreign country's law, by:
        (i) delivering a copy of summons and of the complaint to the individual personally; or

individual in a foreign country "by other means not prohibited by international agreement, as the court orders."

**III.    Discussion**

As an initial matter, the Court notes that Daniel has submitted two declarations to this Court on behalf of plaintiffs, ECF Nos. 10 & 51-5, he is a current manager of both Magma and Meta, ECF No. 105 at 8:2–8:4, has been in contact with plaintiffs' counsel, *id.*, and is therefore clearly aware that this action is ongoing. The Court is troubled that Daniel would choose to engage in this litigation yet refuse to participate in the resolution of Karter's third-party claims.

**A.    Whether the underlying motion is procedurally improper**

Plaintiffs argue that a motion to deem service effectuated is procedurally improper because it is antithetical to the third-party defendants' right to file a Rule 12(b)(5) objection for insufficient service of process. In essence, plaintiffs argue that a motion to deem service effectuated is inconsistent with the Federal Rules of Civil Procedure and the third-party defendants' due process rights.

Whether a trial court is vested with the authority to resolve a motion to deem service effectuated is a question of first impression in our district. Courts in and outside our district have resolved these kinds of motions without deciding the precise question that plaintiffs raise here. *See, e.g.*, *D.Light Design, Inc. v. Boxin Solar Co., Ltd.*, 2015 WL 526835, at *3 (N.D. Cal. Feb. 6, 2015); *Stevo Design, Inc. v. SBR Marketing Ltd.*, 2011 WL 3475688, at *2 (D. Nev. Aug. 9, 2011); *LV Gaming Ventures, LLC v. M Resort Phuket*, 2012 WL 13050871, at *3 (D. Nev. Jan. 31, 2012); *PTA-FLA, Inc. v. ZTE Corp.*, 2014 WL 12734118, at *3 (D.S.C. Nov. 18, 2014). Today, the Court answers the question in the affirmative.

The Federal Rules of Civil Procedure "set out many of the specific powers of a federal district court," but "they are not all encompassing." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016). The Rules, for example, "make no provision . . . for the power of a judge to hear a

---

        (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
(3) by other means not prohibited by international agreement, as the court orders.

motion *in limine*, a motion to dismiss for *forum non conveniens*, or many other standard procedural devices trial courts around the country use every day." *Id.* Instead, these kinds of powers are exercised "in service of Rule 1's paramount command: the just speedy, and inexpensive resolution of disputes." *Id.*

Here, the Rules clearly contemplate that the trial court will resolve disputes pertaining to service of process. *See* Fed. R. Civ. P. 4; Fed. R. Civ. P. 12(b)(5). Not only that, but the trial court often enjoys wide discretion in resolving these disputes. *See, e.g.*, *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007) ("District courts have broad discretion to extend the time for service under Rule 4(m)"); *Rio Props., Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002) ("we commit to the sound discretion of the district court the task of determining when . . . a given case requires alternative service of process"). These rules—coupled with Rule 1's paramount command—clearly vest the Court with the ability to resolve a motion to deem service effectuated.

Further, the Court disagrees that resolving this kind of motion subverts a defendant's due process rights. By granting a motion to deem service effectuated, the Court need not impair a new defendant's ability to raise any of the Rule 12(b) defenses. Instead, the Court may deem service effectuated without prejudice to a potential Rule 12(b)(5) challenge by a new defendant where, as here, the defendant has not directly participated in the resolution of the motion to deem service effectuated. Therefore, the granting of a motion to deem service effectuated need not vitiate the due process rights of new defendants because those defendants are free to raise a Rule 12(b)(5) objection.

**B.     The Hague Convention**

The Hague Convention is a multilateral treaty that "regularized and liberalized service of process in international civil suits." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988); *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). It requires each member country "to designate a Central Authority to receive documents from another member country." *Id.* (citing Hague Convention, art. 2). The receiving country can impose certain requirements for the documents and, if those requirements are met, the Hague Convention requires the Central

Authority to effect service in its country. *Id.* (citing Hague Convention, arts. 4 & 5). China has designated as its Central Authority the Chinese Ministry of Justice. *Davis v. Zhou Liang*, 2018 WL 10502330, at *2 (W.D. Wash. Apr. 5, 2018).

It is beyond question that "compliance with the Convention is mandatory in all cases to which it applies" and, in that context, the federal court is prohibited from issuing a Rule 4 order inconsistent with the Convention's mandates. *Schlunk*, 486 U.S. at 705; *Rio Props., Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1015 n.4 (9th Cir. 2002). But the Hague Convention does not apply in every situation where the defendants reside in a country subject to its terms. *Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 564 (C.D. Cal. 2012). Instead, it applies "where there is occasion to transmit a judicial or extrajudicial document for service abroad." *Id.* (citing Hague Convention, art. 1) (emphasis omitted). Thus, "[i]f valid service occurs in the United States, . . . the Convention is not implicated regardless of the location of the party." *Id.* (citing *Schlunk*, 486 U.S. at 707).

Here, Karter points to four efforts that he believes do not violate the Hague Convention. Karter's counsel sent a copy of the summonses and third-party complaint by: (1) email directly to Michael and Daniel at their respective email addresses, ECF No. 88 at 2; (2) email to plaintiffs' counsel, *id.* at 3; (3) email to Michael and Daniel's counsel, *id.* at 3, ECF Nos. 98 at 12 and 98-8; and (4) international mail to Michael and Daniel at their addresses in the People's Republic of China, ECF No. 88 at 3. Under *Schlunk* and *Brown*, these service methods must comport with the Hague Convention if they require Karter to transmit judicial documents for service abroad.

The fourth method of service raises concerns for the Court. The Supreme Court has concluded that the Hague Convention permits service by mail (i.e., service "by postal channels") "so long as the receiving state does not object." *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1513 (2017). China has affirmatively objected to service by mail. *Facebook, Inc. v. 9 Xiu Network (Shenzen) Tech. Co., Ltd.*, __ F. Supp. __, 2020 WL 5036085 (N.D. Cal. 2020). Therefore, the Court is prohibited from sanctioning this method of service because it is inconsistent with the Hague Convention.

The first method likewise raises concerns for the Court. Although Karter's counsel might have authored and sent the email to Michael and Daniel here in the United States, that email is supposed to have directly reached Michael and Daniel in China. Thus, it is unclear to the court whether the purported service upon Michael and Daniel occurred "in" the United States or whether the email constitutes transmission of a judicial document "for service abroad." *See* Hague Convention, art. 1. At least one district court, in a recent, published decision, has held that service by email directly upon defendants located in China "bypass[es] the means of service set forth in the Convention" and is therefore inconsistent with Rule 4. *Facebook, Inc.*, __ F. Supp. __, 2020 WL 5036085 at *5. The Court finds this authority convincing.

Karter relies in part on *D.Light Design, Inc. v. Boxin Solar Co., Ltd.* for the proposition that Rule 4 permits service by email upon defendants located in China. 2015 WL 526835 (N.D. Cal. Feb. 6, 2015). There, the defendants' physical addresses were unknown. *Id.* at *2. The court, thus, held that the Hague Convention did not apply. *Id.* (citing Hague Convention, art. 1, 20 U.S.T. 361, 658 U.N.T.S. 163; *Liberty Media Holdings, LLC v. Sheng Gan*, No. 11 CV 02754 MSK KMT, 2012 WL 122862, at *3 (D. Colo. 2012)).

Here, however, Karter is apprised of Michael's and Daniel's addresses.[2] Because Karter is aware of Michael's and Daniel's addresses, he cannot, under *Facebook, Inc.*, effect service via email directly to Michael and Daniel without violating the Hague Convention, since Karter would essentially be transmitting a judicial document for service abroad. This Court, then, is prohibited from sanctioning this method of service because it violates the Hague Convention.

The remaining two service methods—service by email upon United States-based counsels for third-party defendants and plaintiffs—do not implicate the Hague Convention because they do not involve the transmission of judicial documents for service abroad. Instead, Karter would be sending an email from the United States to counsel in the United States. Thus, under these service methods, Karter would not be transmitting judicial documents for service abroad, and the

---

[2] Karter asserts in a footnote that he has been unable to confirm the addresses, but the evidence Karter submitted shows that the packages containing the summonses and complaint are "in transit," not that the addresses are incorrect. *See* ECF No. 98-10.

Hague Convention would not apply. Because the Hague Convention would not apply, that particular international agreement does not prohibit service by email under Rule 4(f)(3).

The Court in *Brown v. China Integrated Energy, Inc.* found similarly, though it did not involve service by email. 285 F.R.D. 560 (C.D. Cal. 2012). There, the movants sought to effect service of process upon three individual defendants residing in China. *Id.* at 562. The individual defendants were officers of China Integrated, a corporate defendant that had an American lawyer and registered agent in Delaware. *Id.* at 562, 564. The movants asked the Court to allow for service upon the individual defendants through China Integrated's American lawyer or Delawarian registered agent. *Id.* at 564. These service methods would necessarily occur in the United States. *Id.* And "[i]f valid service occurs in the United States . . . the Convention is not implicated regardless of the location of the party." *Id.* (citing *Volkswagenwerk Aktiengesellschaft*, 486 U.S. 694, 707 (1988)).

Here, similarly, the third-party defendants reside in China and the Cayman Islands. Karter asks the Court to sanction service upon the third-party defendants through lawyers located here in the United States, which means—at the risk of stating the obvious—that service will have occurred in the United States. Pursuant to *Brown*, this method of purported service does not implicate the Hague Convention, regardless of Michael's or Daniel's locations, because Karter need not send documents abroad. *See also Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co., Ltd.*, __ F. Supp. 3d __, 2020 WL 5036085, at *2 (N.D. Cal. 2020) ("the Convention doesn't apply if service can be completed without transmitting documents abroad"); Fed. R. Civ. P. 4 1993 advisory committee's note ("Use of the Convention procedures, when available, is mandatory ***if documents must be transmitted abroad to effect service***.") (emphasis added).

In plaintiffs' opposition to Karter's now-withdrawn Alternative Service Motion—which plaintiffs incorporated by reference in their response to the underlying motion—they rely on two distinguishable cases which they argue require service through the Hague Convention. In *Noco Co. v. Liu Chang*, the court made clear that "the only way to effect service" upon the Chinese-based defendant was "by [electronically] transmitting documents abroad." 2019 U.S. Dist. LEXIS 83085, at *6. This meant that the Hague Convention applied. *Id.* Here, it does not.

1 Karter's two surviving service methods do not require transmission of documents abroad, so
2 *Noco Co.* is inapposite.

3 Plaintiffs also relied on *James Avery Craftsman, Inc. v. Sam Moon Trading Enters*, in
4 which the Court held that service by email was inconsistent with the Hague Convention. 2018
5 U.S. Dist. LEXIS 219083. There, however, the plaintiff sent an email directly to the Chinese-
6 based defendant-company. *Id.* at 2–3. Thus, *James Avery Craftsman* is likewise inapposite
7 because Karter's surviving service methods do not require transmission of an email directly to
8 Chinese-based defendants.

9 Because the Hague Convention is not implicated by Karter's two surviving service
10 methods, the Court turns now to whether these methods of service are otherwise consistent with
11 Rule 4(f)(3).

12 **C.     Rule 4(f)(3)**

13 The Ninth Circuit has held that service by email under Rule 4(f)(3) is proper so long as
14 that service it is reasonably calculated give notice and an opportunity to respond. *Rio Props., Inc.*
15 *v. Rio Intern. Interlink*, 284 F.3d 1007, 1017 (9th Cir. 2002). Alternative service under Rule
16 4(f)(3) "is an equal means of effecting service of process," and a movant need not have attempted
17 every permissible means of service before moving for relief under that rule. *Id.* at 1016. Instead,
18 the movant need only show that "the facts and circumstances" of a case necessitate the district
19 court's intervention. *Id.* This determination is left to the sound discretion of the district court.
20 *Id.*

21 At this juncture, Karter runs into a hurdle that he cannot overcome at this procedural
22 posture. The Ninth Circuit has made clear that under "*Rio* (and in all the cases it cites as applying
23 Rule 4(f)(3))," a movant "must obtain ***prior*** court approval for the alternative method of serving
24 process." *Brockmeyer v. May*, 383 F.3d 798, 806 (9th Cir. 2004) (emphasis added). Here, Karter
25 moves to deem service effective, not for an order directing service. The Court is not privy to any
26 authority that allows it to construe Karter's motion to comport with this rule. Therefore, the
27 Court must deny Karter's motion.

28

Because the Court does not and cannot sanction Karter's two surviving methods of service, the Court expresses no opinion on whether these methods are reasonably calculated to give the third-party defendants notice and an opportunity to respond.  The Court recognizes the apparent waste of time and resources that its decision causes, especially given that at least some of the third-party defendants are aware of this dispute.  But practicality must yield to mandatory authority.  As expressed above, the motion will be denied and an expedited briefing schedule will issue.[3]

**IV.   Conclusion.**

IT IS THEREFORE ORDERED that defendant's motion to deem service effectuated (ECF No. 88) is DENIED.

IT IS FURTHER ORDERED that a new motion for an order directing service is due within one week from today's order; responses are due 5 days after the motion is filed; replies are due 2 days after the responses are filed.

DATED: October 2, 2020.

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE

---

[3] The Court requires that in Karter's new motion for an order directing service, he address not only whether any proposed service method is reasonably calculated to give notice and an opportunity to respond, but also plaintiffs' argument that *Rio Props.* requires him to demonstrate that the facts and circumstances of this case necessitate court intervention.